Date signed March 20, 2007



PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| RIDDICK L. BOWE, 1st | : | Case No. 05-41735PM |
| | : | Chapter 7 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

**MEMORANDUM OF DECISION**

      Before the court in the Second Application of Whitford, Taylor & Preston L.L.P. ("WT&P" and "Applicant"), for Allowance of Interim Compensation for Services Rendered and Reimbursement for Expenses Incurred for the Period January 1, 2006 Through April 30, 2006 (the "Application"). The Application seeks interim compensation of $251,092.00 for the four-month period and reimbursement of out-of-pocket expenses of $11,964.51. The Application is opposed by the office of the United States Trustee and by two creditors, Judy Hart, a/k/a Judy Bowe, and Commerce Funding Corporation ("CFC"). The matter was heard by the court at length on March 15, 2007.

      This bankruptcy case was filed under Chapter 11 on October 15, 2005, on the eve of the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The new law, that is not applicable to this case, makes an individual's filing of a bankruptcy case under Chapter 11 far more difficult. This case was converted to a case under Chapter 7 on February 2, 2007. The Debtor filed a "Schedule of Unpaid Chapter 11 Debts" upon conversion as required by Fed. Rule of Bankruptcy Proc. 1019(5). This schedule showed an estimated bill of $746,295.40 owed to WT&P, $128,677.44 owed to PENTA Advisory Services,

LLC, an accountant and financial advisor, and $2,657.85 owed to Atlantic Auctions, Inc., for storage and appraisal fees. After carefully considering the Application, the opposition, and the record herein, as well as the possibility of an administrative insolvency in this case as the administrative costs of this estate may exceed the amount collected by the Chapter 7 trustee, the court defers ruling on this interim application and await a final application for all services rendered by WT&P during this bankruptcy case since its filing October 15, 2005, under Chapter 11 through the date of conversion to a case under Chapter 7 on February 2, 2007. The court believes that a meaningful final hearing on compensation should be close in time to the filing of the Chapter 7 trustee's final account.

The Debtor, Riddick L. Bowe, 1st, presented a very difficult situation as a potential client. He is a former Heavyweight Boxing Champion of the World now 40 years old. As with many professional athletes and entertainers, he attracted many hangers-on who appeared to have access to his finances and acquired investment advisors who seemed to act without his best interest in mind. Debtor's counsel described dishonest professionals who stole large sums of cash from him. Debtor's Summary of Schedules reflected assets of $1,542,671.00 and debts of $3,879,572.83. Among his assets, Debtor showed a 2001 Bentley Arnage that he valued at $131,000.00, a 2001 Rolls Royce Parkward that he valued at $130,000.00, and a 2002 Bentley Azure that he valued at $233,800.00. It appears that millions of dollars passed through and out of Debtor's hands, and, shortly before the filing of this case, he found himself with all his income cut off, lawsuits filed against him, and property being foreclosed. The court perceives for several reasons that the Debtor was not an easy client for WT&P. For one, he had little in the way of documentation to supply his attorneys. For another, because of his poor treatment by other professionals in the past, it would appear that it was not easy to obtain his confidence, and, most likely, he was listening to other voices besides that of his attorneys.

A case under Chapter 11 involves a plan either to extend payment of debts or to make a composition of outstanding debts that is to be funded by future income. Debtor's only likelihood for success of a plan depended upon what has been described as an ill-advised comeback attempt, *Daily Post* (Liverpool, UK), 2005 WLNR 7123069 (May 6, 2005); *Atlanta Journal-Constitution*, 2006 WLNR 14369900 (August 19, 2006). Debtor's original Plan was replaced by an Amended Plan filed November 20, 2006, the keystone of which was the dedication of a $1 million in future income from boxing matches. The scheduled prizefights never materialized, and a week before the hearing on confirmation of the Amended Plan, Debtor "threw in the

towel" and filed a Notice of Conversion to a case under Chapter 7.  The court considered that Notice, together with motions to dismiss, at a hearing on February 1, 2007, and, for the reasons set forth in its Memorandum of Decision filed the following day, the case was converted to a case under Chapter 7.

The Application is in perfect form and in full compliance with the Compensation Guidelines for Professionals in this court that is attached as Appendix D to the Local Rules.  The court notes also that "billing discretion" has been used by WT&P in writing off some $88,439.05 in unbilled charges.  The court will briefly go through the discussion of the 12 "Johnson" factors described in *Harman v. Levin*, 772 F.2d 1150, 1152 (CA4 1985), and *Barber v. Kimbrell's Inc.*, 577 F.2d 216 (CA4 1978).  The court has no reason to doubt accuracy of the statement of the time and labor expended.  There is no special novelty to this case in that the Debtor is a professional whose Plan funding would have to come from future earnings, not unlike that of a plan filed by an architect, physician, or entertainer.  One difficulty faced in this case was the gathering of required financial information in what the court was told was an almost total absence of records within the Debtor's control.  The amount of skill involved was not exceptional, aside from some potentially complicated litigation.  There appear to be no opportunity costs in pressing the case, and counsel charged its customary fee.  There was a time limitation in that the case should have been filed, and was filed, prior to the amendments to the Bankruptcy Code.  The court will discuss the results obtained further on in the Opinion, and counsel is recognized as an able bankruptcy firm.  The court found nothing undesirable about the case aside from the fact that counsel did not receive a retainer at the time of the filing of the case.  There was no previous history of relationship between the parties.  There did appear to be an extraordinary amount of time expended in the four-month period.

Nevertheless, this case went nowhere.  All that was finished in this case was that the Debtor sold some property, and used the sale proceeds to pay living expenses and, to avoid incarceration, paid a former wife child support.  Counsel spent a substantial amount of time in running down assets and seeking the records that the Debtor was unable to produce.  The court finds that the handwriting as to the future of this case was on the wall well before the Debtor's election to convert was filed.  There are numerous objections of over-lawyering and doing needless work, but the court will not deal with these items individually because of the substantial write-off made by counsel.  The United States Trustee pointed out that these write-offs were not described, making the court's further effort to go through time entries, more difficult.  The work

done on the Plans and Disclosure Statements was fruitless.  The sale of assets by the Debtor did not necessarily benefit the estate.  These funds appear to have been used for Debtor's own purposes.

WT&P spent substantial time dealing with the claim of Debtor's ex-wife and avoiding Debtor's incarceration for contempt.  Judy Hart's counsel described this expense as being in the nature of $80,000.00 for work done on her behalf that he, Hart's counsel, handled on the other side for $10,000.00.  In any event, WT&P may not be compensated out of the estate for this aspect of services described in its Application.  *See* 11 U.S.C. § 330(a)(4)(B).  The Code does not allow payment out of the estate for such services in a case under Chapter 11 as there is no benefit to the estate.  *Collier on Bankruptcy* § 330.04[b][v] (15th ed. Rev. 2006) (explaining the exception to the general rule that professional services are compensable only to the extent that they benefit the estate for work done for individuals in limited cases under Chapter 12 and 13).

The one *Johnson* factor not discussed was the amounts involved and the results obtained.  The key to this Application is found in the language used by counsel on page 22 of its Application as follows:

> **g.  The amounts involved and the results obtained.**  The fees requested by WT&P are reasonable, given the complexity and difficulty of some of the issues involved in this case.  <u>To the extent that any progress has been made in this case, it is a result of WT&P's efforts before, during, and after the Application Period</u>.  (Emphasis added)

There was little, if any, progress made in the case.  Much was done was in anticipation or in aid of litigation.  Until the Chapter 7 Trustee has succeeded in, compromised, or abandoned the litigation encompassed by this work by WT&P, the court cannot measure the results obtained.  In the final analysis of this Application, this is the most critical factor for the court to determine, that is, the degree of success.  *Cf. Hensley v. Eckerhart*, 461 U.S. 424, 433-434 (1983).  While counsel is not a guarantor of the success of a debtor in a case under Chapter 11, counsel cannot be allowed prime rates for a prime failure.

In due course, at some point after the Chapter 7 Trustee has completed most of his work, WT&P will file a final application for compensation.  Considering the financial status of the estate now, there is little point to do more on this interim application.  At a later time the court will be in a better position to measure the results obtained by the Applicant in order to reach a decision that is fair to all parties.  An appropriate order will be entered.

cc:
Stephen B. Gerald, Esq., WT&P, Seven Saint Paul Street, Suite 1400, Baltimore, MD 21202
Lawrence R. Holzman, Esq., 6404 Ivy Lane, Suite 400, Greenbelt, MD 20770
Heather R. Sullenberger, Esq., 4113 Maple Street, Fairfax, VA  22030
Michael G. Wolff, Trustee, 15245 Shady Grove Road, Suite 465, Rockville, MD 20850
David I. Gold, Esq., United States Trustee, 6305 Ivy Lane, #600, Greenbelt  MD  20770
Riddick L. Bowe, 714 Amer Drive, Ft. Washington, MD 20744

**End of Memorandum**